GALVESTON, H. & S. A. RY. CO. v. DICKENS. (No. 5322.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 21, 1914. Rehearing Denied Nov. 18, 1914.)

1. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMED RISK.

Plaintiff, a brakeman, injured by a handhold pulling out as he was ascending a car, did not assume the risk, though he knew it was a bad-order car being moved for repairs; it being a custom of defendant to put chalk marks by the defects on such cars, and none being by such defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§ 217*)—"ASSUMPTION OF RISK"—KNOWLEDGE.

Assumed risk presupposes knowledge, and is one's intelligent choice after he is in possession of the facts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk.]

3. APPEAL AND ERROR (§ 882*)—INVITED ERROR.

The trial court having met a party's objection to a charge that it did not contain certain provisions by supplying them, he may not complain of it because it contained them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

---

**4. TRIAL (§ 256*)—INSTRUCTIONS — REQUEST FOR AMPLIFICATION.**

Defendant, in an action for injury to a brakeman by the pulling out of a handhold on a bad-order car being moved for repairs, if desiring the charge—requiring before a recovery could be had, a finding of negligence of defendant, including one that it knew or should have known of the defect, and also a finding that its failure to put chalk marks near the defect and bend back the handhold was the cause of the accident—to be amplified by a requirement of a finding that plaintiff knew of or relied on the custom to so mark defects and bend back defective handholds, should have requested it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

**5. TRIAL (§ 251*)—INSTRUCTIONS — SUBMISSION OF ISSUES.**

Defendant's requested instruction, requiring as a condition to recovery, in an action for injury to a brakeman from the pulling out of a handhold on a car, an affirmative finding from the evidence that the handhold had not been inspected, as alleged in the petition, is properly refused; the answer alleging the car had been inspected and tagged as a bad-order car, and this not being denied by plaintiff in his pleadings or evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

**6. APPEAL AND ERROR (§ 1004*)—REVIEW—AMOUNT OF DAMAGES.**

Damages awarded by a verdict for personal injuries, authorized if plaintiff's testimony and that of his physicians is true, cannot be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by C. W. Dickens against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden and Ed. W. Smith, all of San Antonio, for appellant. C. C. Harris and M. J. Arnold, both of San Antonio, for appellee.

CARL, J. Appellee, C. W. Dickens, sued appellant, Galveston, Harrisburg & San Antonio Railway Company, for damages in the sum of $30,000 for personal injuries alleged to have been inflicted upon him by and on account of the negligence of the appellant. Appellee alleged that about January 1, 1913, while in the employ of appellant, and in the discharge of his duties, in what is known as the "East Yards" in San Antonio, it became necessary for him to go upon a box car of appellant and ascend to the top of same, and, substantially, that when he reached the top or near the top a handhold pulled out and gave way on account of its defective condition, and as a result he was precipitated to the ground causing his injuries, which are alleged to be serious and permanent. It is alleged that the car was a bad-order car and was being moved to the switch known as "Old

Six" for repairs; that appellee knew it was a bad-order car, but did not know the particular defect; that where handholds were used by such switchmen, it was a custom of the company to mark such defects with chalk marks so as to indicate to the servant, at the place, the defect, and that the railway was negligent in failing so to mark the defective handhold in question; that it was not within the line of his duty to know, and he did not know, of any defects, even where the car had a bad-order card on it, unless they were marked with chalk marks at the particular place where such defect existed; and that the railway was thereby negligent in failing to furnish him a reasonably safe place to work. It was further alleged that it was a custom of the appellant, where a defective handhold was found, not only to mark same, but to pull one end of it out; that the wood where the handhold was fastened was rotten and defective, which caused the screws to give way and pull out, as aforesaid. Appellant demurred generally, pleaded knowledge on part of appellee that it was a bad-order car, and that a bad-order tag was placed thereon, which was notice to appellee of the condition of same; that at the time the alleged accident occurred, the car was being moved to the repair track where it could be further inspected and repaired, and that, as a switchman, it was appellee's duty, in view of his knowledge of the bad order, to take the precaution to make such inspection as would protect himself from accident, and he failed so to do. Assumed risk and contributory negligence on part of appellee were also pleaded. The verdict of the jury was in favor of Dickens for the sum of $9,500, and from judgment based thereon this appeal is taken.

The undisputed evidence shows that the car from which Dickens fell was a bad-order car and was being, at that time, taken to a switch for repairs. Appellee knew it was in bad order and had been taken out of service. He had seen the small tag on the side of the car, but did not read it, and did not know what was on the card, and did not know that the handhold where he was injured was defective. Dickens testified that it was not his duty to read bad-order tags, since they were for the guidance of car repairers; and it was shown to be a custom, upon which he relied, to put chalk marks on the car near defective handholds, etc., used by brakemen and switchmen, to indicate at the place the particular defect. It was also customary to pull out and bend back a loose or defective handhold, so that it could not be used, and this was not done with the one that caused the injury. The bad-order tag on this car was not introduced in evidence, and there is no testimony to show what was on the same, or what a reading of it would have disclosed. The accident was caused by a handhold on or

near the top of the car giving way because the wood where it was screwed down was rotten and would not hold. He fell 12 or 14 feet to the ground and sustained injuries as found by the jury.

[1, 2] Appellant contends that the fact that it was a bad-order car, and appellee knew that it was such, and proceeded to his injury with such knowledge, would make it a case of assumed risk and bar his right of recovery. He did know in a general way that this was a bad-order car, and that it had been withdrawn from service. But he did not know what the particular defect was. Nor can this court say that he would have been enlightened as to that by reading the tag. For some reason appellant has not seen fit to introduce the tag, nor has any effort been made to show what information it contained. The evidence of the plaintiff below that it was not his duty to read and know the contents of the tag stands uncontradicted. We do have positive testimony that where there were defective handholds used by brakemen in switching these disabled cars, large chalk marks would be placed near such defect and upon these the brakemen relied. And there were no such marks at the place of the defect in question. At least, Dickens says there were not, and no other witness has said there were. It would seem that the very nature of the business is such that it would be a harsh rule if the brakemen should be held to know the contents of tags on these cars, which tags are only about 2½ by 3 inches in size. Where they are required to get on and off cars going 12 miles per hour and over, where switches must be made and brakes set and unloosened, it would appear much more reasonable to indicate any defect affecting the safety of employés by marks in large letters at the place of such defect, so that it could readily be seen by a man whose employment requires quick action, and that is what Dickens says was the established custom in that work. In this, no one contradicts him. He knew in general that this car was in need of repair, but did he know where and how it was in bad order? If so, how did he know it? He was not the car inspector, and was in no wise concerned about any defects except those touching his own safety. And these it was customary to indicate to him, and to all similarly situated, by placing chalk marks at the place of danger. Upon the fidelity with which this rule was adhered to, these men risked life and limb. In this instance, the company failed to follow its custom, and appellee, seeing no danger signal, did not assume the risk. Assumed risk presupposes knowledge, and is an intelligent choice after he is in possession of the facts. If Dickens did not know of the defect, and it was not marked, and it was not in line with his duty to read and know the contents of the bad-order tag, he did not

assume the risk of this defect, because he did not know that it existed, notwithstanding the fact that he knew it was a bad-order car. For by the custom established whereby a chalk mark was placed by the defects, it was equivalent to the master entering into a contract with the servant to the effect that when such defects existed, he would be so notified. The absence of such notification was tantamount to an invitation to the brakeman to use the ladder. Its absence said as plainly as words: "Whenever you do not see chalk marks of warning, go ahead and use the ladder. It is all right." This is not in conflict with G., H. & S. A. Ry. Co. v. Hanson, 125 S. W. 67. Although Dickens did have a general knowledge that it was a bad-order car, he would not be held to have assumed the risk of a particular defect where, by a custom, the company had agreed to notify him, if it existed, and had failed to do so. The first three assignments are overruled. M., K. & T. Ry. Co. of Texas v. Poole, 123 S. W. 1176.

[3] By the fourth assignment complaint is made that the court submitted to the jury the issue as to whether the defendant by the exercise of ordinary care would have known that the handhold was not securely fastened, because the question whether the defendant in the exercise of ordinary care would have known that the handhold was not securely fastened is a conclusion and does not require the finding of a fact, no issue being submitted as to whether defendant had not inspected the handhold, as pleaded by plaintiff, and had been guilty of negligence in not having so inspected, and no issue being submitted as to whether the alleged defect in the handhold was one that could have been discovered by the exercise of ordinary care on inspection. It would seem that the original draft of the charge did not contain these matters; for in subdivision (e) of objections originally filed to the charge, complaint was made that the charge did not contain the things that were subsequently put in and about which complaint is now made. Having objected to the charge because it did not contain these provisions, we do not think appellant should now be heard to complain when the court met its objection in the charge given. The assignment is overruled. There is no merit in assignments 5 to 10, both inclusive, and they are overruled.

[4] In the eleventh and twelfth assignments, error is alleged in that the charge authorizes a verdict if the handhold was not securely fastened and defendant by the use of ordinary care would have known that fact, and that it was customary to break off and bend back defective handholds, etc., without requiring a finding that the plaintiff knew of or relied on any such custom, or was misled and deceived by failure to observe the same. The court's charge requires the jury to find that appellant was negligent

before a recovery can be had, and the finding of negligence would necessarily include the further finding that the master knew or should have known of the defects. The charge only authorizes a finding for the plaintiff in case they find that the failure to put chalk marks on the car and bend back the handholds was the cause of the accident. And when the jury found that failure to put the chalk marks there and bend back the handholds was the cause of the accident, they must have found that if those things had been done, he would have heeded the warning and would not have been injured. At any rate, if the appellant desired a more complete charge, it should have been requested, and this was not done. The assignments are overruled. S. A. & A. P. Ry. Co. v. Hahl, 83 S. W. 27; G., H. & S. A. Ry. Co. v. Udalle, 91 S. W. 331; G., H. & S. A. Ry. Co. v. Roberts, 91 S. W. 375.

[5] Appellant requested the following special charge:

"Unless you find affirmatively from a preponderance of the evidence that the handhold in question had not been inspected, as plaintiff has alleged in his petition, then you are instructed that plaintiff is not entitled to recover and to return a verdict for the defendant."

The court refused to give the same, and this is brought up in the thirteenth assignment. There was no error in refusing this charge, because in the answer of the appellant the allegation is made that the car had been inspected and tagged as a bad-order car. This is nowhere denied by the appellee, either in his pleadings or in the evidence. The assignment is overruled.

[6] The jury has found that appellee was injured to the extent of $9,500. He was a young man 27 years of age, earning from $115 to $150 per month before he was injured, and he is now unable to do the same kind of work, and is troubled with incontinence of urine to such an extent that he must wear a rubber tube or receptacle for his urine. If his statements and those of his physicians are true, then we cannot say that the verdict is excessive. The jury, as indicated by the verdict, believed the evidence, and this court will not disturb the judgment.

All assignments not specifically mentioned are overruled, and the judgment is in all things affirmed.