SAN ANTONIO & A. P. RY. CO. v. LITTLETON. (No. 5535.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 1, 1915. Rehearing Denied Dec. 24, 1915.)

1. TRIAL ☞251—INJURIES TO SERVANT—ACTIONS — CONTRIBUTORY NEGLIGENCE — PLEADING—INSTRUCTIONS.

Where the master's answer failed to allege contributory negligence of the employé, whose widow sued for his wrongful death, and the petition failed to show him prima facie guilty of contributory negligence, it was not error to refuse a requested charge on that question.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

2. MASTER AND SERVANT ☞217—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant, who had no knowledge that a danger existed, could not be held to have assumed it, so that decedent car repairer, by merely working on a freight car outside a derail switch, did not assume the risk of other cars being unintentionally kicked on to the track on which he was working, which was only a repair track; the switch being some distance from decedent, so that he could not know that it was open.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. ☞217.]

3. MASTER AND SERVANT ☞295—INJURIES TO SERVANT—ASSUMPTION OF RISK—INSTRUCTIONS.

In an action for the death of a servant who was repairing a car on a regular repair track, but outside the derail switch, and was killed by other cars kicked on to the repair track by mistake, due to the negligence of the company in leaving the switch open, a requested instruction, that if he worked outside the derail he assumed the risk of the danger which caused his death, was erroneous for ignoring the primary negligence of the defendant in leaving the switch open and in running cars, not for repair, upon the repair track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. ☞295.]

4. APPEAL AND ERROR ☞882—INVITED ERROR —INSTRUCTIONS.

A party cannot on appeal complain of error in giving an instruction which he requested.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. ☞882.]

5. APPEAL AND ERROR ☞1060 — HARMLESS ERROR — ARGUMENTS OF COUNSEL — AMOUNT OF VERDICT.

In an action for the wrongful death of a car repairer, after statement of defendant's counsel that the pecuniary loss to plaintiff should be considered in awarding damages, argument of plaintiff's counsel that by loss of her husband she was obliged to wash for a living was not ground for reversal, where the verdict was not so excessive as to indicate that the minds of the jury were thereby inflamed, and a verdict for plaintiff was not against the weight of evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

6. DEATH ☞99—DAMAGES—EXCESSIVE DAMAGES—INJURIES TO PERSONS—LOSS OF EARNINGS.

In an action for the death of a car repairer, aged 37 years, whose earning capacity was $54 per month, verdict for his widow for $8,000 and for each of his three children for $4,000, was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. ☞99.]

7. MASTER AND SERVANT ☞256—INJURIES TO SERVANT—ACTIONS—PLEADING.

A petition in an action for the wrongful death of a car repairer, who sometimes worked on cars used for interstate commerce, may be drawn in the alternative, showing a cause of action under the federal Employers' Liability Act, of April 22, 1908, c. 149, § 9, added by Act April 5, 1910, 36 Stat. 291, § 2 (U. S. Comp. St. 1913, §§ 8657–8665), the state laws, or at common law, depending upon the development of the facts upon the trial for the cause to be relied upon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. ☞256.]

8. PLEADING ☞35—SURPLUSAGE.

That plaintiff sued in her representative capacity as administratrix for the wrongful death of her husband, a car repairer, which she could not do under the state laws, was immaterial and did not defeat her action, where she expressly stated that the suit was under the state law and for herself and her children, and where the charge given was full and proper under the state law, and not under the federal act; the word "administratrix" being merely surplusage and not prejudicial to the defendant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 76–80; Dec. Dig. ☞35.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. MASTER AND SERVANT ⬤⇝256—INJURIES TO SERVANT — ACTIONS — PLEADING — JUDICIAL NOTICE.

In an action for the death of a car repairer, if the facts alleged bring the cause within the federal Employers' Liability Act, it is not necessary to plead the act, since the courts will take judicial notice of it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. ⬤⇝256.]

10. APPEAL AND ERROR ⬤⇝1149 — SCOPE OF REVIEW—JUDGMENT—REFORMATION.

Although a judgment is inartistically drawn, and, as drawn, does not meet the pleadings and the proof, but the intention of the jury is plain, it will be reformed only, on appeal, and not reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. ⬤⇝ 1149.]

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by Roxie Ethel Littleton, as administratrix and personal representative of the estate of J. B. Littleton, deceased, against the San Antonio & Aransas Pass Railway Company. From a judgment for plaintiff, awarding damages to her individually and for the use and benefit of her children, defendant appeals. Reformed and affirmed.

Williamson & Klingeman, of Karnes City, J. L. Browne, of San Antonio, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellant. John W. Thames, of Kenedy, and Sam D. Snodgrass, of Temple, for appellee.

CARL, J. Roxie Ethel Littleton, as administratrix and personal representative of the estate of J. B. Littleton, deceased, sued the San Antonio & Aransas Pass Railway Company for damages on account of the death of her husband, J. B. Littleton, while repairing a car in appellant's switchyard at Kenedy, Tex. The petition also alleges that she is the surviving wife of deceased, and that Stanley B. Littleton, age 11, Mae Ella Littleton, age 7, and Theresa Littleton, age 3, are the only children of the said J. B. Littleton, deceased, and that his father and mother both died before the said J. B. Littleton was killed, and she sues for herself and for the use and benefit of the children; that appellant maintained at Kenedy repair shops, roundhouse, shopyards, and tracks where "bad order" cars were repaired; that among other tracks there maintained are what are known as "rip tracks," which were regularly used in the repair of "bad order" cars, and where the railway's employés were placed to work in such repairing. At Kenedy the railway branches, one line going to Corpus Christi and the other going east to Houston and other points. Between the Corpus Christi and Houston lines is a connecting switch which goes from the Corpus Christi prong of the Y to the Houston branch, and this is south of where the two lines branch and south of the depot, roundhouse, and repair tracks. The "rip tracks" and roundhouse tracks are connected with this line which connects the two branches by switches, and the track upon which deceased was working is equipped with a derailing device. The car upon which he was working, however, was outside or south of the derail at the time of the injury.

A switch engine used in the yards had gone out onto the Corpus Christi main line and gotten a string of empty cars. The engine was south of the cars, and the purpose was to "kick" these cars, or give them such a start that when released from the engine they would run over the connecting switch onto the Houston main line. The switch where the engine had gone out was either left open or was opened by some one, so that when these cars were "kicked" they ran into the "rip track," where deceased had jacked up a·car and was inserting or fixing a bolt, and propelled that car over him, and he was killed. It is alleged that no warning was given him and that the cars were "kicked" at a high and unnecessary rate of speed and force; that before he began work on the car deceased placed a blue flag on display near the south end of the car that stood on the "rip track," between where he was working and the switch, which was a signal or notice to those operating the engine that he was working under or about the car or cars on that track.

Negligence is charged by reason of the "kicking" of said cars at a high and unnecessary rate of speed, in failing to ascertain if the switch was open or in leaving same open, and in failing to provide and keep locked a derailing device for the protection of employés working on that track; and that the derail north of this car was no protection to deceased, because the car upon which he was working was between it and the switch where the empty cars came in. Further, that the switch which controlled the repair track was defective and insufficient, in that it was not provided with a private lock, and that fact, together with a failure to inspect the switch at the time to ascertain if it was closed or open, is charged as negligence. It is also charged that defendant violated its. own rules by disregarding the blue flag which was up on said "rip track" as a warning that employés were at work on said track; and that the company failed to provide deceased with a safe place to work; and all such alleged acts of negligence are charged to have been the direct and proximate cause of the injury.

Defendant denied all the material allegations, pleaded that the track where the injury occurred was equipped with a derailing device as required by law; that Little-

ton knew said track was so equipped, but voluntarily engaged in work on a car outside of the derail and thereby assumed the risk incident to working outside of same; that prior thereto defendant had promulgated a rule for the government of its employés in repairing cars, as follows:

"That no employé shall perform work or engage in labor on any car standing on the repair track outside of and unprotected by derailing devices."

Further, that deceased directed the placing of the car where it was and voluntarily and against instructions engaged in work on the same by reason of which he assumed the risk.

It may be said that defendant filed a special plea in the form of various exceptions to the plaintiff's right to sue in a representative capacity, and did not show by the petition that the car upon which he was working was being used in interstate commerce, and that the suit was brought under the Act of April 22, 1908, § 9, as amended April 5, 1910, of the Federal Employers' Liability Act (chapter 143, 36 Stat. 291, § 2); but in the order overruling such exceptions the court says that plaintiff stated that the suit was brought under the state statute, and that no recovery or liability was claimed under the federal Liability Act.

The verdict and judgment were for $8,000 for Mrs. Littleton and $4,000 each for the three children.

There is no pleading that the car upon which Littleton was working was being used in interstate commerce, nor is there any plea that deceased was guilty of contributory negligence. The exceptions to the petition are, largely, because it does not show that claim is made under the federal act, and because plaintiff cannot sue in a representative capacity under state statute.

It must be kept in mind that paragraph 3 of the amended petition, upon which the case was tried, is:

"Plaintiff files this suit for the use and benefit of herself and for the use and benefit of the children above named and mentioned."

[1] The first assignment of error complains that the court refused to give a specially requested charge, grouping the facts, on contributory negligence. The main charge did contain a general charge on contributory negligence. But defendant below did not plead contributory negligence, and it was therefore not an issue in the case.

"Unless plaintiff's petition makes him prima facie guilty of contributory negligence as a matter of law, or unless the undisputed evidence shows contributory negligence as a matter of law, the defendant, to make out that defense, must allege and prove the act or acts relied on as constituting such negligence." S. A. & A. P. Ry. Co. v. Belt (Civ. App.) 46 S. W. 374, 33 L. R. A. (N. S.) 1208, note; H. & T. C. Ry. Co. v. Harris, 103 Tex. 424, 128 S. W. 897; Lewis v. Railway Co., 57 Tex. Civ. App. 585, 122 S. W. 605.

Contributory negligence was not shown as a matter of law, and it therefore was necessary for same to be alleged and proved in order for it to be available as a defense. The appellant not having pleaded this defense, the court was not required to give any charge at all on that matter, and appellant could not have been injured by the giving of the general charge on that subject. The assignment is overruled. Railway Co. v. Harris, 95 Tex. 346, 67 S. W. 315; M., K. & T. Ry. Co. v. Jones, 35 Tex. Civ. App. 584, 80 S. W. 852; G., H. & S. A. Ry. Co. v. Roemer (Civ. App.) 173 S. W. 230.

The second assignment deals with substantially the same matter as the first, and is overruled.

[2, 3] If by the third assignment it is intended to complain because the court did not give that charge as pertaining to contributory negligence, we have seen that contributory negligence was not pleaded as a defense, and therefore no charge was called for. If, on the other hand, it was intended as a charge on assumed risk, the court gave the defendant's requested special charge No. 3 on that subject defining what assumed risk is. For that matter, it is very doubtful if assumed risk is in the case at all, because neither pleadings nor proof show that Littleton knew the switch was open or that the cars were coming down that "rip track." And before a risk may be assumed, there must be knowledge that the danger is there. The mere fact that he went to work on a car outside the derail does not ipso facto show that there was danger there such as resulted in his death; for the real danger was in the open switch and the company's negligence was in permitting it to be open and in propelling the cars down there without knowing that they would not be run in where these men were working. He may have been guilty of contributory negligence, but the court did charge on that, although not pleaded as a defense. Even if a charge on assumed risk was called for, the one submitted was correctly refused because it made the whole case depend on whether Littleton knew the car upon which he was working was outside the derail, had disregarded his foreman's instructions in so working there, or voluntarily engaged in work outside where he was told to work, that there was danger there, that such danger was or could have been known to him, and a person of ordinary prudence would not have attempted to repair the car under all the circumstances, and that such action was the proximate cause of his injuries. This, of course, ignored the real acts of negligence on part of the company, to wit, leaving the switch open, running the cars in there, etc. He may have assumed such risk as was ordinarily incident to work of the kind at that place, but he could not have assumed the

risk of a danger which he did not know existed, viz., that the switch was open and that a string of cars not intended for that "rip track" would be run in there. G., H. & S. A. Ry. v. Dickens, 170 S. W. 835; M., K. & T. Ry. Co. v. Poole, 123 S. W. 1180. In the case last mentioned several assignments raised the question that the court erred in refusing special charges to the effect that the undisputed evidence showed that appellee knew the work he was doing was being done with the engine backing up and pulling the train, instead of running "front and foremost." Therefore it was claimed he assumed the risk of any danger that might arise from that method of doing his work; that he knew the track was "green, rough, and had low 'joints in it," and therefore he assumed the risk of any injury resulting from the condition of the track, or that he might receive from any defects of the kind mentioned in the charge, whether he knew of the specific defect, which caused the injury or not. The court said:

"These charges ignored entirely the issue, made by the evidence, of the combined negligence of appellant in having the track in the condition it was in and that of the engineer in running the train at too high rate of speed, and also the essential element, to bar appellee's right to recover on the ground that he assumed the risk, that he knew the danger incident to the manner in which, and the rate of speed at which, the train was being run over such a track, or that such danger was apparent to him. Railway Company v. Lempe, 59 Tex. 19. * * * Said charges were also misleading, constructed as they were, and calculated to cause the jury to believe that appellee assumed the risk of any injury resulting to him from the condition of the track, even though there were unusual and extraordinary sags or defects in it which were not apparent and of which appellee had no knowledge."

A recent learned discussion of assumed risk and contributory negligence will be found in G., H. & S. A. Ry. Co. v. Hodnett, 163 S. W. 15, in which Mr. Justice Phillips reviews Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530; Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508; and many others.

What were the risks ordinarily incident to Littleton working outside the derail? It may be that of cars backed in there for repairs, etc., but we do not see how it could be successfully maintained that he assumed the risks of the switch being left open and a string of cars to be hurled in there, when they were not even intended for that track, by the engineer and those handling the switch engine. If assumed risk be based upon the idea of knowledge of the danger assumed, then deceased did not assume the risk from which his death resulted. The assignment is overruled.

[4] The fourth assignment is overruled because the court gave defendant's special charge No. 3, and where several special charges are tendered, and the court gives one, the defendant cannot complain that the charge is not correct. It is invited error, and this court has long held that a litigant will not be permitted to lead the trial court into the giving of a special charge and then be heard to complain that it is not correct.

[5, 6] The fifth assignment complains that the following language, used by counsel for appellee in his closing argument, was not supported by the record:

"Listen! You have heard the charge of the court, and you have heard all the evidence in the case, and you know this good woman and innocent children (counsel here turning for a moment to face plaintiff and her children) have been wronged by the San Antonio & Aransas Pass Railway Company. Yes, sir; wronged, and she has to do washing for a living. The proof in this case shows that she has no estate; that her children have no estate, but, on the contrary, her husband did not leave her anything, and that they were dependent upon his earnings, and that means—what does that mean?—that she must rustle for herself and children"

—for the reason that all said language and argument, and particularly that portion thereof stating that "she has to do washing for a living," was prejudicial, etc. The court explains this bill by saying:

"Mr. J. L. Brown, in his opening argument for the defendant, said in substance, if the railroad should kill my wife, my personal feeling would be that it has not money enough now, nor could not in the next five years make enough, to pay me what I would feel to be my loss; but this is not the question. Mr. Littleton was 37 years old at the time of his death, and the pleading and proof is that he had acquired no estate and for the year preceding his death had earned an average of a little more than $54 per month. I do not refer to this in any spirit of criticism of him, but only to show that in passing upon the question of amount of damages, if you should find any, that the pecuniary loss is to be considered in determining the amount of your verdict."

In Railway Co. v. Jones, 73 Tex. 235, 11 S. W. 187, it is said:

"It is not every case in which this court will reverse for the use of improper language by counsel for the successful party in his argument to the jury. But the evidence will be looked to, and if the verdict be against the apparent weight of the testimony, or the damages seem excessive, it will be presumed the words have had the effect the counsel intended, and the verdict will not be permitted to stand"—citing Willis & Bros. v. McNeill, 57 Tex. 465; Railway v. Jarrell, 60 Tex. 268.

In that case the self-interest of the jurors was appealed to, in that persons would be made paupers and they would, in common with others, have to support them.

In Moss v. Singer Bros., 75 Tex. 323, 12 S. W. 619, the court says the evidence preponderated in favor of appellant and naturally concludes that the highly inflammatory remarks of counsel, appealing to race prejudice, must have turned the tide against appellant.

In this case it cannot be said that the preponderance of the evidence was apparently in favor of the appellant. Judge Stayton said, in I. & G. N. Ry. Co. v. Irvine, 64 Tex. 535:

"The use of improper language or course of argument by adverse counsel, within itself, fur-

nishes no sufficient reason for reversing a judgment; and it is only in cases in which a preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal."

We are unable to say, from an examination of this case, that the verdict is excessive, or that it is against the preponderance of the testimony to such an extent that it could only be accounted for on the theory that the minds of the jurors were inflamed by the statement made that Mrs. Littleton had been wronged and would have to do washing. The jury awarded her $8,000 for the loss of her husband, and to each of the three small children $4,000 for the loss of their father. Railway Co. v. Wininger, 151 S. W. 594; Railway Co. v. Smith, 153 S. W. 394. The assignment is overruled, and for the reasons stated above the sixth assignment, complaining that the verdict is excessive, is likewise overruled.

[7-10] The car upon which Littleton was working when killed was empty, and the evidence does not show how long it had been out of use, nor when it was intended to be used again. The testimony is to the effect that this car was used indiscriminately for both intrastate and interstate commerce; but it is not shown how long it had been in the yard for repairs, nor when it was again to be placed in use, nor whether for interstate or intrastate commerce when so placed in use. It is true that Goodloe says it would be used for interstate business, but he bases this on the fact that it did not have an X before the number, the absence of which indicated that it was for interstate business.

Mr. Justice Van Devanter says, in Illinois C. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163:

"Passing from the question of power to that of its exercise, we find that the controlling provision in the act of April 22, 1908, reads as follows: 'That every common carrier by railroad, while engaging in commerce between any of the several states, * * * shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce. The act was so construed in Pederson v. Railway Co., 229 U. S. 146 [33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153]. It was there said: * * * 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the em-

ployé is employed by the carrier in such commerce.' * * * 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' And a like view is shown in other cases. * * * Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

In the case of Hench v. Pennsylvania Ry. Co., 246 Pa. 1, 91 Atl. 1056, L. R. A. 1915D, 557, it is substantially stated: There can be no recovery under the federal act where all that the evidence shows is that the employé was a brakeman in the general freight yard of the defendant, and that in the yard wherein he was employed cars containing both intrastate and interstate shipments were received, stored, shifted, and reloaded for transportation from time to time, and that the cars upon which he was at work at the time of the injury were empties.

This car was not on its own line, was empty, and it is not shown that it had been used in interstate commerce prior to the time it was set in the yard for repairs, nor that it would be so used when repaired. The yard where it was being repaired belonged to a road wholly within this state. The "real or substantial connection" of the employment with interstate commerce, referred to so often by decisions of the United States Supreme Court, does not appear in this case. It must be shown to affect interstate commerce. For instance, in the Pederson Case, supra, the injured party was carrying bolts to repair a bridge which was essential to the carrying on of interstate commerce, and without the use of the bridge, of course, interstate commerce could not pass. Neither could interstate trains pass without the aid of the switchman engaged to keep the switches open or properly turned for the passage of trains, just as it was necessary to keep the track clear of obstructions, as shown in the case of the man who was employed to sweep the snow from the tracks so that interstate commerce might pass, who was held to have been engaged in interstate commerce. And so with the man injured in placing a drawbar on an engine then being used in interstate commerce. It was an aid and necessary to the carrying on of interstate commerce.

But in this case the failure to repair the car may or may not have interfered with interstate commerce, or may or may not have been an aid thereto.

There is no reason why a petition may not be drawn in the alternative so as to show a cause of action either under the federal Employers' Liability Act, or under state laws, or upon common law; liability depending

upon the development of the facts upon the trial for the cause to be selected. This petition did not, however, declare upon the federal act, but the trial was under the state laws. There is no allegation that Littleton was engaged in interstate commerce.

The charge contained all the necessary elements required upon contributory negligence, assumed risk, etc., under the state law and which would not have been applicable to a trial under the federal act. The mere fact that plaintiff sued as administratrix, as well as for her individual benefit and that of the children, would not be material. If she had proceeded under the federal act, she could only have recovered in her capacity as administratrix, but when she stated that she was proceeding under the state law, as shown by the court's order overruling appellant's exceptions, the term "administratrix" was a mere surplusage, and no injury could have resulted to appellant by reason thereof. M., K. & T. Ry. Co. v. Wulf, 226 U. S. 572, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134.

She did not have to plead the federal act, because the courts will take notice of that without pleading it (Wulf Case, supra); but she would have to plead facts which would bring her within its terms if she sought to recover under that law, such for instance as would show that deceased was engaged in interstate commerce. This was not done, but the petition did show that the suit was brought for her own benefit and that of her children. And we do not think it material what she called herself, so long as the purpose was plainly stated that the suit was for her own and her children's benefit. The jury evidently found for the plaintiff under the state law, and proceeded to apportion the damages.

The judgment is somewhat inartistically drawn; but, since the intention of the jury is plain, the judgment will be here reformed so as to read that Roxie E. Littleton recover $8,000 for herself, and for the use and benefit of each of the three children the sum of $4,000. And, as so reformed, the judgment is affirmed.