WALKER, J., dissenting; BROWN, J., concurs in this dissent.
This is an action of damages for wrongful death under the Federal Employers Liability Act. The plaintiff's intestate was killed at 4 a. m., 9 February, 1917, in a wreck between Monroe and Wingate about a mile east of Monroe. Said intestate was conductor on the westbound freight train and was proceeding towards Monroe. He had placed a caboose and tank car in front of the engine and was pushing them and pulling 36 freight cars when 21 heavily loaded freight cars which had gotten lose at Monroe rolled down the grade, striking his train, and killing plaintiff's intestate.
The following issues were submitted:
1. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."
2. Did the plaintiff's intestate, by his own negligence, contribute to his death, as alleged in the answer? Answer: "Yes."
3. Did the plaintiff's intestate, by his own conduct, assume the risk of being killed by the collision between his train and the runaway cars, as alleged in the answer? Answer: "No."
4. What damage, if any, is the plaintiff entitled to recover for herself as the widow of her intestate? Answer: "$10,000."
5. What damage, if any, is the plaintiff entitled to recover for the infant Gus Horton? Answer: "$5,000."
6. What damages, if any, is the plaintiff entitled to recover (474) for the infant, Annie Horton? Answer: "$5,000."
To which the jury responded as above set out.
Judgment was rendered upon the verdict, from which defendant appealed. *Page 504 
The defendant does not discuss in his brief Exceptions 3,5,6,7,11, and 12, which, therefore, under Rule 34, are deemed abandoned.
The plaintiff alleged that the death of her intestate was caused by the negligence of the defendant (1) in allowing loaded freight cars to run down its main line without any one in charge to exercise control over them; (2) in making up a train upon its main line upon a steep grade, and in allowing loaded freight cars to stand upon the grade without brakes being properly applied; (3) in violently bumping cars left upon the grade; (4) in equipping the cars which broke loose with defective couplers.
There was evidence tending to support these charges of negligence and the court properly instructed the jury in regard thereto.
The fourth assignment of error is that the court charged as follows: "If the jury find from the evidence that the wreck which caused the death of the plaintiff's intestate was solely and proximately caused by the negligence of defendant's servants in not properly applying brakes on cars standing on its main line on a grade, the jury are instructed that the risk of this negligence was not assumed by the deceased in allowing the caboose in which he was riding to be pushed by the engine, even if the deceased would have escaped injury if the caboose had been behind the engine instead of in front of it."
In this we find no error. The doctrine of assumption of risk is that an employee assumes the risks of accidents and injuries incident to the business properly operated. He does not assume the risk caused by the negligence of the company, in not furnishing proper appliances or in any other respect. In this case the jury have found that the death of the intestate was due to the negligence of the defendant in the particulars above set forth. If the plaintiff in any respect contributed thereto by putting the caboose and tank car in front of the engine, this was not assumption of risk, but was contributory negligence, and though it is not clearly apparent that this action contributed to the collision with the runaway cars, the jury have so found, and neither party has (475) appealed on that ground, and the jury have apportioned the damages under the Federal statute. Such contributory negligence was the act of the intestate and not a risk of the business which he assumed.
In R. R. v. Campbell, 241 U.S. 497, the Court said: "It is most earnestly insisted that the findings established that Campbell was not *Page 505 
in the course of his employment when he was injured, and consequently that judgment could not properly be entered in his favor upon the cause of action established by the general verdict. This invokes the doctrine that where an employee voluntarily and without necessity growing out of his work abandons the employment and steps entirely aside from the line of his duty, he suspends the relation of employer and employee and puts himself in the attitude of a stranger or a licensee. The cases cited are those where an employee intentionally has gone outside of the scope of his employment, or departed from the place of duty. The present case is not of that character. . . . We are not aware that in this case it has been seriously contended that because an engineer violated his orders he went outside of the scope of his employment."
Conceding that the conduct of the deceased was in violation of State law because the intestate, who was a conductor, was running the train without the headlight displayed as required by State law, he did not thereby become a trespasser to whom the defendant owed no duty save to retain from willful injury. His conduct, at most, as between him and his employer was contributory negligence, which the jury have found. In the case just cited the United States Supreme Court held that though Campbell was guilty of a criminal offense in violation of State law. "his right to recover against his employer depends upon the acts of Congress, to which all State legislation affecting the subject-matter must yield." citing R. R. v.Riggsbee, 241 U.S. 33.
The deceased was not a trespasser, but was an employee engaged at the time of his death in the discharge of his duty, and if guilty of negligence in the make-up of his train, the damages have been diminished on account of that negligence by the provision of the Federal Employers Liability Act that the negligence of an employee should not defeat but merely diminish the recovery.
There is a vital difference between contributory negligence and assumption of risk, which is thus stated, 1 Labatt on Master and Servant secs. 305 and 306, as follows: "Assumed risk is founded upon the knowledge of the employee, either actual or constructive, of the risks to be encountered, and his consent to take the chance of injury therefrom. Contributory negligence implies misconduct, the doing of an imprudent act by the injured party, or his dereliction in failing to take proper precaution for his personal safety. The doctrine of assumed risk is founded upon contract, while contributory negligence is solely matter of conduct. This distinction has often been approved by the United (476) States Supreme Court in cases under the Employers' Liability Act R. R. v. Horton, 233 U.S. 492; R. R. v. Wright, 235 U.S. 376. *Page 506 
The distinction is well stated in Richie "Federal Employers' Liability Act" (2 Ed.), 169, as follows: "Though an employee is said to assume the risk of the consequences resulting from a violation of rules, this is properly contributory negligence. And an employee in view of severe weather conditions is guilty of contributory negligence and does not assume the risk when he fails to protect the rear of his train by proper signals, though warned by the following engineer that it was impossible to see the block signals and told to do a good job of `flagging.'"
Exceptions 8 and 9 are as follows:
8. "If you answer this third issue (assumption of risk) `Yes,' the plaintiff cannot recover at all."
9. "In this connection I will say to you that `assumed risk' is founded upon the knowledge of the employee of the hazzards to be encountered and his consent to take the chance of injury therefrom."
We find no error in these instructions, which require no discussion.
The intestate left a wife and two children, and Exceptions 1 and 2 are to the court submitting an issue as to damages sustained by each of the three beneficiaries for whom the action was brought.
At the time of his death the deceased was engaged in discharging the duties of a freight conductor on one of the defendant's freight trains engaged in interstate commerce, as is admitted in the defendant's brief, and this action brought under the Federal Employers' Liability Act.
There is a radical difference between the wrongful death statute of North Carolina, Revisal, 59, and the provision of the Federal Statute under which this action is brought. Revisal 59, provides that the action shall be brought by the personal representative of the decedent: "The amount recovered in such action is not liable to be applied as assets in the payment of debts or legacies, but shall de disposed of as provided in this chapter for the distribution of personal property in case of intestacy." And Revisal, 60, provides: "The plaintiff in such action may recover such damages as are fair and just compensation for the pecuniary injury resulting from such death."
The Federal statute provides as follows: "Every common carrier by railroad, etc., shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee for such injury *Page 507 
or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier or by reason (477) of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, road bed, works, boats, wharves, or other equipment."
Under our State statute the damages are based upon the present worth of the net pecuniary value of the life of the deceased. Ward v. R. R.,161 N.C. 186. Under the United States statute the damages are based upon the pecuniary loss sustained by the beneficiary. R. R. v. Zachary,232 U.S. 248.
Under the State statute the jury assesses the value of the life of the decedent in solido, which is disbursed under the statute of distributions. Under the United States statute, the jury must find as to each plaintiff what pecuniary benefit each plaintiff had reason to expect from the continued life of the deceased, and the recovery must be limited to compensation of those relatives in the proper class who are shown to have sustained such pecuniary loss. R. R. v. Vreeland, 227 U.S. 59; R. R. v.Didricksen, ibid., 145; R. R. v. McGinnis, 228 U.S. 173; R. R. v. Zachary,232 U.S. 248. In the latter case the Court said: "The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This of course excludes any recovery in behalf of such as show no pecuniary loss."
This was not overruled in R. R. v. White, 238 U.S. 507. In the latter case the defendant did not ask to have the damages apportioned by the jury, but moved for arrest of judgment after the verdict was rendered because the verdict was a general one. The Court merely held that the verdict was not void because not apportioned and that the apportionment was no concern to the defendant, who can not be heard if it did not except on the trial. None the less the plaintiff has a right, as in this case, to have the jury apportion the recoveries.
The defendant in this case strenuously insists that the matter has been settled otherwise in this State by the decision In re Stone, 173 N.C. 208. In that case the decision was correct upon the facts, for it was not an action brought under the Federal Employers' Liability Act, but a proceeding to distribute a fund in the hands of the administratrix, and this Court held that it should be distributed according to our statute of distributions, and the writ of error to the United States Supreme Court was dismissed for want of jurisdiction. The opinion in that case, quoting in conclusion from R. R. v. White, supra, said: "The *Page 508 
amount allotted to each party entitled is no concern to the defendant, unless such allotment increased the amount of the total recovery." The Stone case was also correct in construing the Federal statute as (478) to the three classes of beneficiaries and holding as follows: "The Federal statute, therefore, creates three classes, which are separate and distinct from the other. If there is any member of the first class, but one or more of the second, then the third class will be excluded. If any member of the last class does not come under the provision `dependent upon such employee' (Dooley v. R. R., 163 N.C. 454), then such person is excluded from that class, and if such exclusion should apply to the whole of that class, then there can be no recovery. If the recovery by `next of kin' should be enlarged by the wrongful inclusion of one not `dependent,' that question must be raised at the trial by proper exceptions. R. R. v. Zachary, 232 U.S. 248."
The opinion In re Stone, however, proceeded to say, as contended by the defendant in this case, that "the Federal statute makes no provision for the apportionment of the funds, and therefore the State statute controls. The source of recovery is the United States statute, and that indicates only the different classes of the beneficiaries and the manner of ascertaining the amount due. But when the amount and class are ascertained, the sum paid or recovered must be distributed in that class according to the requirement of the State law." It is true this was not necessary to the decision in that case, but we must frankly say, after further advisement and fuller consideration, that this conclusion cannot be sustained. It is at variance with the tenor of the Federal statute, which is based upon the loss of each beneficiary in the class entitled as the measure of the recovery, and this can only be ascertained, logically, by a finding of the jury as to the amount of loss sustained by each of the beneficiaries entitled. It may well be that one or more of the children or one or more of the next of kin may have received very slight or no pecuniary loss, while the loss to others who were "dependent upon the deceased" was much greater.
In Collins v. R. R., 148 N.Y. Supp., 781, the Court quotes from R. R.v. McGinnis, 228 U.S. 173, as follows: "The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss," and adds that the jury having returned a verdictin solido without apportioning the amount among those dependent upon the plaintiff's intestate, the judgment was reversed. *Page 509 
In Kenny v. R. R., 167 N.C. 14, this Court held that the words "next of kin" must be construed in each State by the statutory meaning of those words in that State, and on writ of error, 240 U.S. 489, this was upheld; but this does not militate against the apportionment required by the statute as to each member of the class (479) entitled to recover.
This matter has been so fully considered by the United States Supreme Court that we do not deem it necessary to elaborate it, or to say more than that our contrary ruling in the obiter dictum in the Stone case is overruled.
Exception 10 is as to the following charge: "As to the children, the damages would be such an amount as the deceased would reasonably be expected, under all the facts and circumstances in the case, to have contributed towards the maintenance and education of the two children; the loss sustained is peculiarly their own, including a recovery for the loss of that care, counsel, training and education which the child might under the evidence, have reasonably received from the parent, and which could only be supplied by the services of another for compensation."
And Exception 13 is that the Court charged: "The award for each child will embrace compensation for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from its father, and which can only be supplied by the services of another for compensation. The jury will note in this instruction that the element of damage with regard to the care, counsel, training, and education of the children is an element which applies to them but which does not apply to the wife."
We find no error in these instructions. The defendant objects that the jury were not restricted to the minority of the children as regard maintenance. But we think that it is fair and reasonable intendment from the context and that the jury could not have been misled. The instruction was as to the loss of care, counsel, training, and education, to be reasonably expected from the father, and maintenance naturally would be implied only to the same extent.
Exceptions 14 and 15 are merely formal, and the other exceptions not discussed above were, as already stated, abandoned by not being brought forward in defendant's brief.
No error.