## Tennessee Central Railroad Company v. Walker.

### (Decided November 13, 1913).

### Appeal from Christian Circuit Court.

1.  Railroads—Killing of Stock—Evidence.—In an action against a railroad company to recover damages for injuries to a mare that

resulted in her death, evidence examined and held sufficient to sustain a verdict in favor of plaintiff.

2.  Witnesses—Introduction—Discretion of Trial Court.—Where at the noon hour plaintiff announced through, and the defendant asked for a peremptory, but the court withheld his decision in order to give plaintiff an opportunity to introduce another witness who at that time was serving on the jury, it was not an abuse of discretion on the part of the trial court to permit plaintiff to introduce two other witnesses after court convened.

JOHN B. RUSSELL and DOWNER & RUSSELL for appellant.

C. H. BUSH and W. T. FOWLER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Mrs. Mary L. Walker, owned a valuable mare. The mare ran on to a trestle on the road of the Tennessee Central Railroad Company. Her legs were broken and she had to be killed. Plaintiff brought this action against the railroad company to recover damages. From a verdict and judgment in her favor for $250 the railroad company appeals.

According to the evidence for plaintiff, plaintiff owns a farm adjoining the railroad right of way. Plaintiff's mare was perfectly gentle and standard bred, and was worth from $250 to $300. The mare was in a pasture near the railroad right of way. In some way she escaped from the pasture, and got on defendant's tracks. The point where her tracks were first seen was about 485 yards from the trestle. For about 40 yards her tracks indicated that she was walking or going at a slow gait. From that point on to the trestle her tracks were wide apart and deeper and larger, and indicated that she was running. The mare ran on to the trestle. Defendant's train, which was following her, stopped within a few feet of the trestle. The trainmen threw the mare off the track, and she was subsequently killed. There was evidence that at a point estimated to be from 500 to 700 yards from the trestle the engineer blew the stock whistle.

According to the evidence for the defendant, when the engineer saw the mare she was about 900 feet from the trestle. The engine was about 1,100 feet from the trestle. He could not see her before that as he had only an oil headlight which would disclose objects at a distance of 150 to 200 feet. As soon as he discovered the

presence of the mare on the track he sounded the stock alarm and put on the emergency brake. At the time he was running down a 1 1-2 per cent grade and was traveling about 30 miles an hour, with 1,200 tons of freight. The train conductor testified that he first saw the mare when the engineer sounded the alarm. He did not know how far she was from the trestle, but estimated the distance at about 300 yards. It was impossible to tell the exact distance. The section foreman testified that he saw the mare's tracks a distance of about 900 or 1,000 feet from the trestle. The mare was running when she hit the track. There was also evidence to the effect that the mare could have gotten off the track at any point between that and the trestle.

The evidence was not only sufficient to take the case to the jury, but to sustain the verdict. The defendants' employees only estimated the distances in regard to which they testified. There was no attempt on the part of the defendant to show the distances by actual measurement. On the other hand, several of plaintiff's witnesses made actual measurements. There was evidence tending to show that the mare got upon the track at a point about 485 yards from the trestle. In proceeding towards the trestle she was running for a distance of about 440 yards. The stock alarm whistle was blown at a point between 500 and 700 yards from the trestle. That being true, the engineer must have observed the mare on the track at that time. He says that he could have stopped the train in 1,000 to 1,200 feet. According to his estimate the train was actually stopped in a distance of 900 feet. After blowing the whistle he ran from 1,500 to 2,000 feet, according to the evidence of plaintiff. Manifestly, under these circumstances, the question of negligence was for the jury. This is not a case where the railroad employees stand unimpeached and uncontradicted. While no attempt was made to impeach them, yet plaintiff's witnesses testified to many facts tending to contradict their testimony. Therefore, the rule announced in Mobile & Ohio R. Co. v. Morrow, 30 Ky. L. Rep., 83, does not apply.

At the noon hour plaintiff announced through. Defendant asked for a peremptory. The court indicated that he would give a peremptory, but withheld his opinion to give plaintiff an opportunity to introduce another witness who was at that time serving on a jury. When the court convened after dinner, plaintiff did not

introduce the witness referred to but introduced two other witnesses. The defendant objected to their testifying, and now insists that the court erred in admitting their evidence. In matters involving the introduction of other witnesses, and in a general conduct of a trial, the circuit court is vested with a large discretion. His rulings will not be interfered with unless it be made to appear that such discretion was abused. In this case no abuse of discretion is shown.

The petition, if defective, was cured by the verdict. Judgment affirmed.