# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Hench *v.* Pennsylvania Railroad Co., Appellant.

*Negligence—Railroads—Death of employee—Acts of Congress of April 22, 1908, 35 Stat. 65, c. 149, and March 2, 1893, 27 Stat. 531, c. 196.*

1. In an action against a railroad company brought under the Acts of Congress of April 22, 1908, 35 Stat. 65, c. 149, and March 2, 1893, 27 Stat. 531, c. 196, to recover damages for the death of plaintiff's husband, the burden is upon the plaintiff to prove the facts necessary to show the violation of the Federal statutes, and that the injured party was engaged in interstate commerce, or with its instrumentalities at the time of the accident.

2. In such case where it appeared that decedent was employed as a brakeman in the freight yard of the defendant company and that he was injured while coupling empty cars, but the only evidence from which it could be inferred that the cars which deceased was coupling were being used in interstate commerce was that in the yard in which he was employed, cars containing both intra and interstate commerce were received, stored, shifted, and reloaded from time to time, there is no presumption that the cars being shifted at the time of the accident were intended for use in interstate commerce.

*Evidence—Suppression of evidence—Rule of spoliation—Negligence—Railroads.*

3. Where in an action against a railroad company under the Acts of Congress of April 22, 1908, 35 Stat. 65, c. 149, and March

2, 1893, 27 Stat. 531, c. 196, to recover damages for death of plaintiff's husband, a brakeman who was fatally injured while coupling cars, defendant's clerk who kept certain records of cars moved in the yard was subpœnaed by plaintiff to produce the records of the conductor of the train which injured deceased, for the purpose of showing what cars such conductor moved in the freight yard on the night of the accident and the witness testified that he had no such records, and that upon inquiry he was informed that no records of empty cars were kept, the contention of the plaintiff that defendant had suppressed the evidence and that therefore a presumption arose that the evidence, if produced, would show that the cars were being used in interstate commerce, was without merit, in the absence of other evidence from which it could be inferred that the cars which deceased was coupling were being so used, or were intended for such use.

Argued May 4, 1914. Appeal, No. 202, Oct. T., 1913, by defendant, from judgment of C. P. Washington Co., Aug. T., 1912, No. 70, on verdict for plaintiff, in case of Stella M. Hench, Administratrix of the Estate of Edgar S. Hench, deceased, v. Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before TAYLOR, J.

The witness Allen was a clerk in defendant's employ, who had charge of the records of loaded cars moved in the freight yard, where the accident occurred.

Other facts appear in the opinion of the Supreme Court.

Verdict for plaintiff for $9,000, and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, instructions to the jury, and in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*R. W. Irwin* and *Rufus S. Marriner,* with them *Jas. A. Wiley,* for appellant.—The evidence was insufficient

to sustain the allegations that deceased was engaged in interstate commerce at the time of the accident: Pederson v. The Del., Lackawanna & Western, 33 U. S. Superior Ct. Repr. 648; Mondou v. N. Y., N. H. & H. R. C., 223 U. S. 1; Baltimore & Ohio Railroad Company v. George H. Darr, 204 Fed. Repr. 751; Johnson v. S. P. Co., 196 U. S. 1; St. Louis & S. F. R. Co. v. Delk, 86 C. C. A. 95, 158 Fed. 931; M. P. Horton, Administrator, v. Oregon, Washington R. R. & Nav. Co., 72 Washington 503; Zikos v. Oregon R. R. & Nav. Co. (C. C.) 179 Fed. 893; Colasurdo v. The Central R. Co., (C. C.) 180 Fed. 832; Baker v. Kansas City, M. & O. R. Co., 88 Kan. 767; Dewberry v. Southern R. Co. 175 Fed. 307; Charleston and W. C. R. Co. v. Anchors, 10 Ga. App. 322, 73 S. E. 551; Behrens v. Ill. C. R. Co., (D. C.) 192 Fed. 581.

There was no suppression of evidence relating to the character of the commerce in which the draft of cars were being used which would raise a presumption that deceased was engaged in interstate commerce: Tsmura v. Great Northern Ry. Co., 58 Wash. 316, 108 Pac. Repr. 774; Penna. R. R. Co. v. Raiordan, 119 Pa. 577; Chaffee v. U. S., 85 U. S. 501.

*W. Clyde Grubbs*, with him *Edwin T. Levengood* and *Alexander M. Templeton*, for appellee.—There was evidence from which the inference could be drawn that the cars about which deceased was working were being used in interstate commerce at the time of the accident: Chandler v. Roeder, 65 U. S. 227; Longenecker v. Pennsylvania Railroad Company, 105 Pa. 328; McGrann v. Pittsburgh & Lake Erie Railroad, 111 Pa. 171; Fisher v. The Monongahela Connecting Railroad Company, 131 Pa. 292; Johnson v. Brunner, 61 Pa. 58; Devlin v. The Beacon Light Company, 198 Pa. 583 (48 Atl. Repr. 482); Smith v. The Baltimore and Ohio Railroad Company, 158 Pa. 82 (27 Atl. Repr. 847); Portland Ice Company v. Connor, 32 Pa. Superior Ct. 428; Cohen v.

The Philadelphia & Reading, 211 Pa. 227 (60 Atl. Repr. 729); Bannon v. Pennsylvania Railroad, 29 Pa. Superior Ct., 231; Pennsylvania Railroad v. White, 88 Pa. 327; Warner v. The B. & O., 168 U. S. 329 (18 So. Repr. 68); Richmond and Danville Railroad Company v. Powers, 149 U. S. 43 (13 So. Repr. 748); B. & O. Railroad v. Griffith, 159 U. S. 603 (16 So. Repr. 105); Ferry v. The Philadelphia Rapid Transit, 232 Pa. 403; McManamon v. Hanover Township, 232 Pa. 439; Heh v. Consolidated Gas Company, 201 Pa. 443 (50 Atl. Repr. 994); North Carolina Railroad Company v. Zachary, 232 U. S. 248.

OPINION BY MR. JUSTICE ELKIN, July 1, 1914:

This is an action of trespass to recover damages for personal injuries resulting in the death of plaintiff's husband who was employed as a brakeman in a general freight yard of defendant railroad company located in the City of Pittsburgh. The suit was brought under two Acts of Congress—the Employer's Liability Act of April 22, 1908, and the Safety Appliance Act of March 2, 1893. In such a case the burden is on the party suing to prove the facts necessary to show a violation of the Federal statutes, and that the injured party was engaged in interstate commerce or with its instrumentalities at the time of the accident. In the case at bar the injured party was engaged as a brakeman on a shifting crew in a freight yard where all kinds of freight were received and distributed. If the action had been brought at common law or for the violation of a State statute, the question of the character of the commerce in which the decedent was engaged at the time of his injury would have been immaterial; but plaintiff elected to bring her suit under the Acts of Congress, as she clearly had the right to do, and thus assumed the burden of making out a case under the Federal statutes. The controlling question for decision here is whether the evidence adduced at the trial was sufficient to make out a prima facie case

under the Acts of Congress relied on to sustain a re-
covery. Appellant contends the evidence does not show
that in the performance of his duties as brakeman the
deceased husband had anything to do with interstate
commerce, or that at the time of the injury he was en-
gaged in such commerce, or that the cars being shifted in
the freight yard where decedent was injured, including
the cars which caused the injuries, were so engaged.
Even counsel for appellee concede that there was no
direct or positive testimony bearing upon these material
questions. No attempt was made to prove what the gen-
eral duties of decedent were, or what duties were in-
cluded within the scope of his employment, and the fact
that he was a brakeman only appears as an incident of
the trial without explanation as to the character of his
general duties, or that he had anything to do in connec-
tion with interstate shipments. At the close of the trial
the only substantive fact proved tending to show in any
way decedent to have been engaged even remotely in in-
terstate commerce, was that in the freight yard where he
was employed cars containing both intra and interstate
shipments were received, stored, shifted, and reloaded
for transportation from time to time. So far as the evi-
dence discloses there is no greater presumption that the
empty cars being shifted at the time of the accident were
intended for use in interstate commerce, than that they
were to contain intrastate shipments. The evidence is
silent as to the character of freight with which these
cars were loaded when they arrived in the freight yard,
what disposition had been made of the cars after their
arrival, and what kind of shipments, if any, they con-
tained when they left the yard. All of these important
facts are left to conjecture. Can it be said under these
circumstances that the plaintiff made out a case under
the Acts of Congress? It is argued that where there is no
direct or positive evidence of the negligence charged, or
of the facts required to make the Acts of Congress appli-
cable, the circumstances may be such as to warrant the

necessary inference to be drawn by the jury. This is stating the rule more broadly than the cases relied on warrant. It is true that the facts proved at the trial may warrant a presumption of negligence and there are exceptional cases in which it has been so held. But even in such cases it is for the court to say whether the facts proved are sufficient to raise the presumption relied on: 38 Cyc. 1519; Stoever v. Whitman, 6 Binney 416. In the case at bar the facts proved do not show what kind of commerce decedent was engaged in at the time of the accident. The empty cars may have been intended for interstate shipments, or for intrastate. There is no more presumption one way than the other. The presumptions in this respect are equal, if indeed it can be said there is any presumption under such circumstances. Again, it is worthy of notice, that the cars being shifted were empties and did not contain any kind of commerce, and there is no evidence to show from whence they came nor whither they were going; what kind of shipments they carried into the freight yard, or what character of commerce they were engaged in when they left it.

It is further contended for appellee that the failure to produce the records of the draft of cars in question when subpœnaed to do so amounts to a suppression of evidence on the part of appellant and raises a presumption that decedent was engaged in interstate commerce. The difficulty with this argument is that the facts do not sustain it. The witness Allen was subpœnaed to produce the records of the conductor Hickey showing the cars he moved in the freight yard on the night of the accident. The witness appeared and testified and there is nothing in his testimony to indicate a suppression of evidence. He said he had no such records and that as soon as the subpœna was served he wired the Philadelphia office, where all records were kept, asking for the records in question, but was informed that no record of empty cars was kept. This witness testified that reports

of loaded cars were kept, but not of empty cars handled
in the yard.  The evidence was straightforward and was
not disputed.  This stands as an established fact by a
witness produced by plaintiff and not challenged by any
one.  The witness could not produce what he did not
have, and how can it be said that he suppressed a record
which never existed?  There were two loaded cars in the
draft of twenty-two cars but counsel for plaintiff asked
no questions about the loaded cars, and indeed these cars
had nothing to do with the injury of decedent.  Coun-
sel did ask the witness Hickey for the number of
the car which caused the injury, and was informed that
it was, "Hopper, 682970."  No further inquiry was made
about this car, nor about the other five cars in the draft
being shifted at the time decedent was injured.  The
numbers of these cars could have been obtained, their
movements could have been traced, and the kind of ship-
ments they contained when loaded and made up into
trains could have been ascertained by proper inquiry,
but no such questions were asked and no attempt was
made to elicit this information, or to establish these ma-
terial facts.  We discover no attempt to suppress evi-
dence in this record nor is there anything to indicate
that the witness Allen did not tell the exact truth when
he testified that no record of empty cars was kept while
they were lying in the freight yard awaiting consign-
ment in regular trains, or were being shifted for this
purpose.  Under this state of facts, it is our opinion, that
the rule of spoliation upon which the contention of ap-
pellee is based, has no application.

As we view this case the burden was on plaintiff to
prove facts to show that her husband was engaged in
interstate commerce, or had to do with the instrumen-
talities of such commerce, at the time he received his in-
juries, and as to these essential facts the proofs fail to
make out a prima facie case.  It is difficult to lay down
a definite rule marking the division lines between intra
and interstate commerce in this class of cases so as to be

able to determine with precision and exactness in each case as it arises whether the injured employee was or was not engaged in interstate commerce within the meaning of the Acts of Congress. Much depends upon the facts of each particular case, and hence the necessity of proving the essential facts relied on to show that the injured party was engaged in interstate commerce, or had to do with its instrumentalities when he was injured. How liberally the Acts of Congress shall be construed, and to what extent they may be widened and broadened in their enforcement so as to include injured persons only remotely or incidentally engaged in interstate commerce, and without reference to their primary and principal duties, is not for this court to finally determine. To hold the scales evenly balanced, so as not to unduly limit the powers of Congress on one hand, nor yet encroach upon the proper exercise of state jurisdiction on the other, is not an easy task for any court. But there must be a division line at some point in each case, and the facts must be the guide to determine where that line shall be drawn. We are not unmindful of the recent decisions of the Supreme Court of the United States in which this question has been broadly considered. These cases construe the Federal statutes most liberally and will have the effect of extending their application in many directions. Such are: Southern Railroad Co. v. United States, 222 U. S. 20; Mondou v. Railroad Co., 223 U. S. 1; Pederson v. Railroad Co., 33 U. S. Sup. Ct. Repr. 684, and other cases of like import. We must assume, however, that it was not the intention of these decisions to construe the Acts of Congress so as to make them cover injuries sustained by an employee engaged in intrastate commerce at the time he was injured. Certainly the Acts of Congress could not apply to a railroad, or its employees, engaged exclusively in intrastate commerce and not having any business of an interstate character. But no such situation is likely to arise, because nearly every railroad in this country, and per-

haps every one, engages to some extent in interstate commerce, either by shipments to points outside the State, or by receiving cars or freight from points beyond State lines. If the mere fact that a railroad may be used at times, frequently or otherwise, for interstate commerce transportation, fixes the status of all its employees as being engaged in interstate commerce within the meaning of the Acts of Congress, without reference to the duties they were performing at the time of the injury, it would follow that all such employees no matter how incidentally or remotely their duties had to do with interstate commerce generally, or what kind of commerce they were engaged in when injured, would come within the purview of the Federal statutes when they brought an action to recover damages for personal injuries. To so hold would mean the wiping out of all State regulation and authority in matters relating to the personal injuries of railroad employees. The cases have not gone so far, and we do not see how the rule can be laid down so broadly without doing violence to the plain language of the commerce clause of the constitution which limits the Federal power to interstate subjects. Our view is that in cases like the one at bar commerce must be regarded as of two kinds, intra and interstate, and the status of the employees must be determined by the kind of commerce they are engaged in at the time the injuries were sustained. If they were engaged in interstate commerce the Acts of Congress apply; if they were engaged in intrastate commerce the Federal statutes have no application. All of this depends upon the facts, and in order to make out a case under the Acts of Congress, plaintiff must prove that the injured person was engaged in interstate commerce at the time of the accident. In the present case this burden was not borne.

This position is sustained by a historical view of the decisions and legislation relating to this subject. The Employer's Liability Act of Congress of June 11, 1906, 34 Stat. 232, was declared unconstitutional by the Su-

preme Court of the United States because it included subjects wholly outside the power of Congress under the commerce clause of the Constitution—that is subjects relating to intrastate commerce: Employers' Liability Cases, 207 U. S. 463. Following that decision Congress passed the Act of 1908 which in plain language limited its application to interstate commerce and to "any person suffering injury, while he is employed, by such carrier, in such commerce." The evident purpose of this act was to limit its application to interstate subjects and to correct what the Supreme Court of the United States had pointed out as a fatal defect in the Act of 1906. Keeping in mind the plain language of the Act of 1908, and the sequence of events which led to its enactment, how can it be successfully contended that it may be so enlarged and extended as to include injuries to all kinds of employees engaged in all kinds of commerce, and that it is not to be restricted to interstate commerce and to persons engaged therein?

There is some question as to the evidence being sufficient to sustain a charge of negligence under the Acts of Congress even if it appeared that decedent was engaged in interstate commerce at the time. It is a close question to say the least, but it is of no special importance in the view we have taken of the case, that there was no proof to show decedent to have been engaged in interstate commerce. Having failed to establish this essential fact the case falls.

This case has now been heard and carefully considered by all the members of this court with the result that there is entire agreement upon the conclusion reached. In other words we all agree that the evidence was insufficient to make out a case showing that decedent was engaged in interstate commerce when injured.

Judgment reversed and is here entered for defendant upon the whole record.