## Louisville & Nashville Railroad Company v. Jolly's Administratrix.

(Decided January 14, 1930.)

704

706

ASHBY M. WARREN, J. P. HAMILTON and ROUSE & PRICE for appellant.

NORTHCUTT & NORTHCUTT and LULA A. NORTHCUTT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is an action to recover damages for personal injuries resulting ultimately in the death of plaintiff's intestate, Henry C. Jolly, an engine hostler, who was scalded by escaping steam released as the result of collision between two locomotives. Two grounds of action were asserted, one for the death and the other for the conscious suffering of the injured man. The action was predicated upon the Employers' Liability Act of Congress of April 22, 1908 (45 USCA, secs. 51-58), as amended April 5, 1910 (45 USCA, sec. 59). The amendment provided for the survival of the cause of action of the injured employee, when death from the injury was not instantaneous. The plaintiff recovered a verdict upon each cause of action, and the trial court refused a request of the railroad company for a new trial. It appeals, insisting (1) that the case did not come within the purview of the Federal Employers' Liability Act because the intestate was not engaged in interstate com-

merce at the time of his injury; (2) that the decedent was guilty of contributory negligence as a matter of law, and that the trial court should have so advised the jury; (3) that the damages allowed are palpably excessive; (4) that the court abused its discretion in permitting the case to be reopened for the introduction of further evidence after an argument had been addressed to the jury; and (5) that the instructions were erroneous in directing the jury to apportion its verdict among the several dependents according to their respective pecuniary losses and in defining contributory negligence under the federal act. These contentions will be considered and determined in the order stated.

1. There was evidence tending to show that Jolly and his helper had taken a passenger train to Cincinnati, Ohio, and had returned to the roundhouse in Covington, Ky., for further orders; that the assistant foreman at the roundhouse had received an order to provide an engine for a 1:45 a. m. extra job; that the assistant foreman had been told by the foreman to use engine No. 923 then at the water tank for that purpose; that the assistant foreman had ordered Jolly to prepare engine No. 923 for that service; that Jolly proceeded without his helper to move the engine from the water tank to the coal bins for the purpose of coaling it, after which it was to be placed by him on the ready track for the train crew to take charge of for pulling the extra cut of cars; that before reaching the coal bin the accident occurred in which the engine was disabled, and Jolly injured. The locomotive was under a full head of steam when taken by Jolly, and a single coaling would have served for several hours. There was evidence also tending to show that only interstate transfer cars were handled in this yard between the hours of 12:00 a. m. and 6:00 a. m. and that train crews were not called during that period for local work, but only for interstate work; that the "1:45 extra job" to which engine No. 923 had been assigned was a string of cars to be delivered in Cincinnati, Ohio, to connecting carriers and was so delivered shortly after the accident. The question is whether Jolly's work in moving and preparing the engine as ordered was employment in interstate commerce, even though the interstate cars had not yet been connected to the engine. The test of employment in interstate commerce is whether the employee at the time of the injury is engaged in interstate transportation, or in work so closely related to it

as to be practically a part of it. Each case must be determined on its own peculiar facts, and no formula can be found "invariable by circumstances or free from confusion by them in application." Industrial Accident Com. v. Davis, Agent, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888; cf. Hench v. Penn. R. Co., 246 Pa. 1, 91 A. 1056, L. R. A. 1915D, 557, Ann. Cas. 1916D, 230; New York C. & H. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298. The problem is not to be solved by considering the mere physical position of the employee at the moment of the injury, but by the character of the work he was doing and its immediate purpose and effect. If the tendency of the particular act is to expedite, further, or facilitate a movement in interstate commerce, or to secure its safety, its performance can not be a matter of indifference to that traffic. Kinzell v. Chicago, M. & St. P. R. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893; Morrison v. Chicago, M. & St. P. R. Co., 103 Wash. 650, 175 P. 325, certiorari denied 249 U. S. 611, 39 S. Ct. 386, 63 L. Ed. 801. Or, to put the proposition in another form, if the injury to the workman operates to delay, hinder, or interfere with the free movement of interstate trains or traffic, it is essentially immediate thereto and comprehended within the prescribed test. Baltimore & O. R. Co. v. Darr (C. C. A.) 204 F. 751, 47 L. R. A. (N. S.) 4; Southern R. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Lamphere v. Oregon R. & Nav. Co. (C. C. A.) 196 F. 336, 47 L. R. A. (N. S.) 1. If an employee is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefit of the federal act, although the accident occurred prior to the actual coupling of the engine to the interstate cars. St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129; Southern Ry. Co. v. Lloyd, 239 U. S. 496, 36 S. Ct. 210, 60 L. Ed. 402; North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Van Buskirk v. Erie R. Co. (C. C. A.) 279 F. 622; New York C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298; Moore v. Grand Trunk R. Co., 93 Vt. 383, 108 A. 334.

Illuminating instances found in the reported cases illustrate the application of the principle. In Pedersen

v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 S. Ct. 648, 649, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, the plaintiff was injured while carrying a sack of bolts to a bridge to be used in repairing it. The bridge was used by trains carrying both kinds of commerce. The court said: "We are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it"

In Walsh v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, it was held that a car repairer, replacing a drawbar in a car then in use in interstate commerce, was within the protection of the federal act. In Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096, a fireman engaged in piloting a locomotive through several switches to a main track, where it was to be attached to an interstate train to assist it up a grade, was held to be employed in interstate commerce. In St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, a clerk in a railroad yard, injured while on his way to meet an incoming train to mark the cars so that the switching crew, in breaking up the train, would know what disposition to make of them, was found to be engaged in interstate commerce. In North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, it was held that a fireman, having inspected, oiled, fired, and prepared an engine for an interstate trip, was performing acts as a part of interstate commerce, although the locomotive was not coupled to the train and the fireman was injured on the ground while making a casual trip to his boarding house. In Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 452, 64 L. Ed. 709, the plaintiff operated a signal tower and water tank, the tower being used for the operation of trains in both commerces. The tanks were used for supplying the locomotives with water which was pumped from the wells into the tank by a gasoline engine operated by plaintiff. He was injured by an explosion of the gasoline engine. The court said: "Plaintiff was assigned to duty in the signal tower and in the pump house and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes therefore within the indicated test.

It may be said however, that this case is concerned exclusively with what was to be done, and was done, at the pump house. This may be true but his duty there was performed and the instruments and facilities of it were kept in readiness for use and were used on both commerces as were demanded, and the test of the cases satisfied.''

In Philadelphia, B. & W. R. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869, an employee of an interstate railroad who was serving as cook in a camp car for a gang of bridge carpenters, injured on a side track while in performance of his duties, was held to be embraced by the provisions of the act. In Erie Railroad Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 455, 64 L. Ed. 794, the plaintiff was employed in the railroad yards at a small structure where sand was dried to supply the engine. The drying was done in stoves which it was plaintiff's duty to attend. The ashes were carried out and dumped in the ash pit, and, while engaged in that work, plaintiff was injured. Referring to the distinctions sought to be made by separating the duties and assigning them by intervals of time, to the one or the other kind of commerce, the court said: ''The distinctions are too artificial for acceptance. The acts of service were too intimately related and too *necessary for the final purpose* to be distinguished in legal character.'' In Philadelphia & R. R. Co. v. Di Donato, 256 U. S. 327, 41 S. Ct. 516, 517, 65 L. Ed. 955, the court said: ''Di Donato was employed by the company as a flagman at a public crossing to signal both intrastate and interstate trains. In other words, his employment concerned both kinds of trains without distinction between them or character of service. He was an instrument of safety for the conduct of both. And in the course of his employment he was killed by a train whose character is not disclosed. . . . The service of a flagman concerns the safety of both commerces and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity and commit it to confusing controversies.'' Cf. Philadelphia & R. R. Co. v. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. Ed. 958. In Pennsylvania Co. v. Donat, 239 U. S. 50, 36 S. Ct. 4, 60 L. Ed. 139, the trial court refused to rule as a matter of law that Donat was not engaged in interstate commerce. He was acting under instructions and engaged in the switching movements requisite to place two loaded interstate cars on a

private switch. "There was evidence tending to show that, in order to complete this movement, it became necessary to uncouple the engine from the loaded cars and with it to remove two empty ones from the private track. While engaged about the removal, defendant in error was injured." A judgment in his favor based upon the federal act, was affirmed upon the authority of New York C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298. In Philadelphia & R. R. Co. v. Hancock, 253 U. S. 284, 40 S. Ct. 512, 513, 64 L. Ed. 907, the work of the injured man was confined to one state. But cars of coal handled by his crew were destined beyond the state, as shown by memoranda delivered to the conductor at the mine. They were moved from the mine to a yard, where they were to be gathered into a train, and thence moved some miles to a weighing station, there to be inspected, weighed, and billed to specific consignees in another state. "The coal was in the course of transportation to another state when the cars left the mine. There was no interruption of the movement; it always continued toward points as originally intended. The determining circumstance is that the shipment was but a step in the transportation of the coal to real and ultimate destinations in another state." It was held that the case was governed by the federal act. Cf. McCluskey v. M. & N. R. Co., 243 U. S. 36, 37 S. Ct. 374, 61 L. Ed. 578. In Southern Ry. Co. v. Lloyd, 239 U. S. 496, 36 S. Ct. 210, 60 L. Ed. 402, a servant, injured while preparing an engine presently to be sent on an interstate trip, was held to be doing work so intimately associated with interstate commerce as to be practically a part of it. See, also, Hines v. Burns, 189 Ky. 761, 226 S. W. 109; Baltimore & O. R. Co. v. Darr (C. C. A.) 204 F. 751, 47 L. R. A. (N. S.) 4; Pittsburgh, C. C. & St. L. R. Co. v. Glinn (C. C. A) 219 F. 148; Slatinka v. Railway Administration, 194 Iowa, 159, 188 N. W. 20, 24 A. L. R. 608. The cases in which the Supreme Court has determined that the work being done was not interstate commerce, or so intimately associated therewith as practically to be part of it, are equally instructive in a study of the evolution of the law through the process of inclusion and exclusion so characteristic in the development of our jurisprudence. We review the ones relied upon by the appellant, and refer to others.

In Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, the employee was

engaged in moving cars of coal from tracks, where they had been for over two weeks, to storage bins to supply coal to the chutes at which engines were coaled. It was held to be too remote from interstate commerce to be a part of it in a practical sense. Cf. Lehigh Valley R. Co. v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070. In Illinois C. R. Co. v. Behren's Adm'r, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, the injured servant was engaged in a purely local movement within the state, wholly disconnected from interstate commerce. In Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, the employee was injured while repairing an engine which had been wholly withdrawn from commerce. Cf. Industrial Accident Comm. v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888; Law v. Ill. Cent. R. Co. (C. C. A.) 208 F. 869, L. R. A. 1915C, 17; Chicago K. & S. R. Co. v. Kindlesparker, 246 U. S. 657, 38 S. Ct. 425, 62 L. E. 925, reversing (C. C. A.) 234 F. 1; Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 36 S, Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. In Chicago & N. W. R. Co. v. Gray, 237 U. S. 399, 35 S. Ct. 620, 59 L. Ed. 1018, the court did not hold that Gray's employment as a hostler was not in interstate commerce, but found it unnecessary to determine that question, because the laws of the state of Wisconsin, under which Gray got a judgment, and the federal statute, upon which the railroad company relied, were so similar as to render it harmless to the carrier whether the one or the other law be applied. Cf. Kansas City Western R. Co. v. McAdow, 240 U. S. 51, 36 S. Ct. 252, 60 L. Ed. 520; Chicago R. I. & P. Ry. Co. v. Wright, 239 U. S. 551, 36 S. Ct. 185, 60 L. Ed. 431; Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 355, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Wabash Ry. Co. v. Hayes, 234 U. S. 86, 34 S. Ct. 729, 58 L. Ed. 1226. In Erie Ry. Co. v. Walsh, 242 U. S. 303, 37 S. Ct. 116, 118, 61 L. Ed. 319, the Supreme Court sustained the Ohio Supreme Court in ruling that the case was controlled by the state law, but was careful to say:

"The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the 'F. D. yard' as to be a part of it or a necessary incident thereto. (Citing cases.) And this depends upon whether the series of acts

that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error. It results that, in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed.''

The circumstance that the engine might be intercepted before reaching the interstate cars, or that the train crew on inspection might reject it or require further preparation, or that the actual preparation of the engine required several acts in addition to coaling, does not alter its character as an instrument of the interstate commerce to which it had been definitely assigned. Such duties constituted an indivisible task, although to be performed in a series, and all related immediately to the movement of the interstate cars for which ultimate purpose the engine was moving when the accident happened. This view is fully fortified by the authorities already cited. The fact that an interstate trip had just been completed by Jolly and his helper, and the further fact that engine No. 923 had been recently in the roundhouse for repairs, which had been finished, were alike insignificant in fixing the character of Jolly's work at the time of the injury. Both incidents were closed (Ill. Cent. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Erie R. Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319; Southern R. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69), and the nature of Jolly's work when hurt is characterized by the ultimate purpose of handling an interstate train toward which he was moving the engine and to which it had been definitely directed. Louisville & N. R. Co. v. Parker, 242 U. S. 13, 37 S. Ct. 4, 61 L. Ed. 119; Kinzell v. Chicago, M. & St. P. R. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893. Employment in interstate commerce begins when a workman on the carrier's premises makes a forward move to serve in

that traffic, and it does not end until there is complete disassociation therefrom. Patterson v. Penn. R. Co., 284 Pa. 577, 131 A. 484. Certiorari denied 270 U. S. 649, 46 S. Ct. 349, 70 L. Ed. 780.

We think the evidence justified the court in finding that the work in which Jolly was engaged when hurt was essentially a part of the interstate commerce which the carrier was conducting. An opposite conclusion is wholly insupportable. Appellant did not ask to have the question submitted to the jury, but demanded a peremptory instruction in its favor upon the ground that there was no tendency of the testimony to show that the injured man was engaged in interstate commerce. Clearly no error was committed by the court in refusing that request. Louisville & N. R. Co. v. Parker's Adm'r, 242 U. S. 13, 37 S. Ct. 4, 61 L. Ed. 119.

2. It is next urged that Jolly was guilty of contributory negligence, and that the trial court should have declared the legal effect of that fact in the instructions to the jury. Louisville & N. R. Co. v. Heinig's Adm'x, 162 Ky. 14, 171 S. W. 853. There are two reasons why the contention cannot prevail. In the first place no such instruction was requested in the trial court and may not be originated here. Louisville, H. & St. L. R. Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073; Ray v. Shemwell, 186 Ky. 445, 217 S. W. 351; Baltimore & O. R. Co. v. Leach, 173 Ky. 452, 191 S. W. 310; Helge v. Babey, 228 Ky. 197, 14 S. W. (2d) 757. In the next place the evidence did not warrant the trial court in giving such an instruction if it had been asked, which accounts, no doubt, for the failure of the appellant to request it at the trial. If but one conclusion as to a fact reasonably may be derived from the evidence, that fact may be assumed in framing the instructions. Hobson, etc., on Instructions to Juries, sec. 29, p. 11. But if the evidence respecting a fact be in conflict, or if different deductions may be derived from uncontradicted testimony, the determination of the ultimate truth must be left to the jury. Western & A. R. R. v. Hughes, 278 U. S. 496, 49 S. Ct. 231, 73 L. Ed. 473; Randall v. Baltimore & O. R. Co., 109 U. S. 478, 3 S. Ct. 322, 27 L. Ed. 1003; Smith v. United States, 151 U. S. 50, 14 S. Ct. 234, 38 L. Ed. 67; Travelers' Ins. Co. v. Randolph (C. C. A.) 78 F. 754; Standard L. & A. Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116. The argument that Jolly was guilty of contributory negligence assumes that he had

stopped his engine on a cross-over track in violation of a rule or requirement of the company, and that he had moved the engine without a headlight in the absence of his helper. The evidence upon all these matters was in conflict or capable of varying conclusions. It was not proven by undisputed testimony that Jolly stopped on the crossover. There are cogent circumstances tending to show the contrary. There is room for dispute as to whether the absence of the helper was the fault of Jolly, or whether he should have delayed the movement of the engine until his helper was found. Neither is it conclusively shown that the absence of the helper was a factor in the fatality. The same is true with reference to the headlights on the engine, which may have been burning at the time of the collision. There is negative evidence that the lights were out shortly after the collision, but that is accounted for by proof that the lights died with the engine when the steam escaped, and the fires were extinguished. The lights on the colliding engine did not prevent the accident, and it is conceivable that it would have happened irrespective of a headlight on the other one. The most that could be said from the evidence was that it afforded room for opposite deductions, and it was within the province of the jury to determine the correct conclusion to be drawn. Cf. Union Pac. R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. Ed. 751. The Act of Congress provides (45 USCA sec. 53) that "contributory negligence" of the injured party "shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable" to him, with a proviso not now pertinent. It may be stated generally that under this section the contributory negligence of an employee is not a bar to an action for an injury received by him, but operates only to diminish the damages recoverable for the injury. Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528; Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096; Grand Trunk R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838; St. Louis, etc., R. Co. v. Brown, 241 U. S. 223, 36 S. Ct. 602, 60 L. Ed. 966; Union Pacific R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. Ed. 751. It is only when the negligence of the injured servant is the sole cause of his injury that a recovery is denied him. Atlantic Coast Line R. Co. v. Driggers, 279 U. S. 787, 49 S. Ct. 490, 73 L. Ed. 957; Frese v. Chicago, B. & Q. R.

Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Atlantic Coast Line R. Co. v. Davis, 279 U. S. 34, 49 S. Ct. 210, 73 L. Ed. 601; Great Northern R. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 32; Unadilla Valley R. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224; New York, C. & St. L. R. Co. v. Niebel (C. C. A.) 214 F. 952; Reed v. I. C. R. Co., 182 Ky. 467, 206 S. W. 799; Pennsylvania Co. v. Cole (C. C. A.) 214 F. 948, certiorari denied Pittsburgh, C., C. & St. L. R. Co. v. Cole, 250 U. S. 671, 40 S. Ct. 15, 64 L. Ed. 1199; Louisville & N. R. Co. v. Heinig's Admrx., 162 Ky. 14, 171 S. W. 853.

The question of contributory negligence was submitted to the jury by instructions presently to be discussed when we come to consider the complaints of appellant upon that score. It is sufficient to say that the evidence adduced upon that subject was so conflicting in character and effect as to justify the court in leaving it to the jury.

3. It is insisted that excessive damages were allowed by the jury. Henry C. Jolly was an engine hostler employed by the carrier in Covington, Ky. He was 31 years of age and was survived by his wife, Mamie F. Jolly, who was 26 years of age, and by three children, James Lee, age 8 years, Hazel Elizabeth, age 6 years, and Raymond Edward, age 5 months. Jolly was severely scalded by escaping steam caused by the breaking of a pipe in his engine cab when another locomotive collided with the one Jolly was operating. He survived four days and suffered intensely as a result of the injuries. His wife and children were wholly dependent upon him for support. He had earned in his employment with the railroad company, during the year 1927, the sum of $2,518.27. The jury by its verdict assessed the damages for conscious pain and suffering at $5,000, and, for the death of Jolly, at $28,000, apportioned as follows: To the widow $10,000, to the oldest child $4,000, to the second child $6,000, and to the youngest child $8,000. Jolly had worked for the railroad company several years, and his net savings from his earnings amounted to about $2,600, which he had invested in a home for himself and family. He was a sober, saving, industrious man, devoted to his family, and in the enjoyment of good health. It is not contended that the amount allowed the widow was excessive as to her, or that the pecuniary benefits reasonably to be expected by her from a continuation of the life of her husband, reduced to their present value, were not

fairly worth that amount of money. Nor is it contended that the amounts allowed the children were excessive as to either of them. The insistence is that the aggregate of the allowances was too great. Plainly, when the correct measure of damages has been submitted to the jury, and it has made an award within the evidence which is not excessive as to either of the beneficiaries or as a whole, the matter is concluded by the verdict. If the aggregate of the damage found is within the reasonable range of the purpose and power of the employee to provide pecuniary benefits for his dependents, it cannot be said to be excessive. There is no mathematical rule for the measurement of damages, but the matter must be left to the jury to fix the amounts authorized by the evidence in the light of the decisions of the Supreme Court delimiting and defining the elements that may enter into it. And under the inflexible rule adopted and applied by this court the verdict of a properly instructed jury will not be interfered with unless it strikes the judicial mind at first blush as being so grossly excessive as to manifest passion and prejudice on the part of the jury where only deliberation and judgment should prevail. Louisville & N. R. Co. v. Holloway, 168 Ky. 262, 181 S. W. 1126, affirmed by U. S. Supreme Court 246 U. S. 525, 38 S. Ct. 379, 62 L. Ed. 867; Louisville & N. R. Co. v. Allen's Adm'r, 174 Ky. 748, 192 S. W. 863; Director General v. Chapman's Adm'x, 195 Ky. 364, 242 S. W. 365. The Supreme Court, in a series of cases, has defined the legal standard of pecuniary loss contemplated by the act, and fixed the appropriate rules for its measurement. The dependents of the decedent are entitled to be compensated for the loss of pecuniary benefits which they had a reasonable expectation of receiving from the decedent if he had not been killed. Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 517, Ann. Cas. 1914C, 179; Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; Louisville & N. R. Co. v. Holloway, 246 U. S. 525, 38 S. Ct. 379, 62 L. Ed. 867; Norfolk & W. R. Co. v. Holbrook, 235 U. S. 625, 35 S. Ct. 143, 144, 59 L. Ed. 392; Gulf, C. & S. F. R. Co. v. Moser, 275 U. S. 133, 48 S. Ct. 49, 50, 72 L. Ed. 200. In the Holbrook case the court said:

"Where death is instantaneous, the beneficiaries can recover their pecuniary loss and nothing more; but the relationship between them and the deceased

is a proper circumstance for consideration in computing the same. The elements which make up the total damage resulting to a minor child from a parent's death may be materially different from those demanding examination where the beneficiary is a spouse or collateral dependent relative; but in every instance the award must be based upon money values, the amount of which can be ascertained only upon a view of the peculiar facts presented. (Citing cases.) In the present case there was testimony concerning the personal qualities of the deceased and the interest which he took in his family. It was proper, therefore, to charge that the jury might take into consideration the care, attention, instruction, training, advice, and guidance which the evidence showed he reasonably might have expected to give his children during their minority, and to include the pecuniary value thereof in the damages assessed."

In the Moser case the court said:

"Chesapeake & Ohio R. Co. v. Kelly's Admx., 241 U. S. 485, 491, 36 S. Ct. 630, 60 L. Ed. 1117 (L. R. A. 1917F 367), and Chesapeake & Ohio R. Co. v. Gainey, Admr., 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124, announce the applicable rule. In the first, we distinctly stated that: 'In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.' The interpretation approved by us has become an integral part of the statute."

The jury in this case was instructed in accordance with the federal statute, as interpreted by the Supreme Court, and no further instruction was requested by the railroad. The probable expectancy of the decedent, his age, health, earning capacity, the earning power of money, and the rate of interest realized on prudent investments, are all matters of evidence and were properly before the jury, affording a basis for the estimation of damages to each of the dependents. But these evidentiary elements were not conclusive upon the jury,

and its finding could not be subjected to rigid mathematical limitations. Southern Ry., Carolina Division, v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860; Louisville & N. R. Co. v. Holloway, 168 Ky. 262, 181 S. W. 1126, affirmed 246 U. S. 525, 38 S. Ct. 379, 62 L. Ed. 867; Director General of Railroads v. Chapman, 195 Ky. 365, 242 S. W. 365. The jury had a right to consider also the proven value of the personal services of decedent to his beneficiaries which they reasonably might have received from him and which could only be supplied by the services of others for compensation. Michigan C. R. Co. v. Vreeland, supra; Norfolk & W. R. Co. v. Holbrook, supra. The pecuniary benefits of which the dependents have been deprived by the death of the employee include, not only the support, raiment, and shelter which they have lost, but also personal services and other benefits measurable in money, when the evidence is sufficient to show that decedent was disposed and competent to provide benefits of that character. Michigan C. R. Co. v. Vreeland, supra; Norfolk & W. R. Co. v. Holbrook, supra; Director General v. Chapman, supra. The facts and factors to be considered by the jury in determining damages need not be repeated; and the principles by which this court decides whether a particular verdict is excessive are sufficiently expounded in the reported cases. A comparison of the evidence and the verdict in this case with the evidence and verdicts in Louisville & N. R. Co. v. Holloway's Adm'x, supra; Southern Ry., Carolina Division, v. Bennett, supra, and in Louisville & N. R. Co. v. Allen's Adm'x, supra, demonstrates that the verdict under review is not excessive, but within the law. Tested by the principles applied in Louisville & N. R. Co. v. Wingo's Adm'x, 213 Ky. 336, 281 S. W. 170, and Director General v. Chapman's Adm'x, 195 Ky. 364, 242 S. W. 365, where judgments were reversed for excess, the damages assessed here are not beyond the limits prescribed. It is not excessive as to either beneficiary or as a whole (Ill. Cent. R. Co. v. Skinner, 177 Ky. 62, 197 S. W. 552, certiorari denied by the Supreme Court 246 U. S. 663, 38 S. Ct. 333, 62 L. Ed. 928), and is clearly within the reasonable probabilities of the pecuniary losses sustained by the several beneficiaries. The Supreme Court has approved verdicts proportionately as large (Southern Ry., Carolina Division, v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L., Ed. 860; Louisville & N. R. Co. v. Holloway, 246 U. S. 525, 38 S. Ct. 379, 62

L. Ed. 867), and has refused to review others where the verdicts were even larger, although the facts were not more favorable to the plaintiffs. Hines, Agent v. Mills (Tex. Civ. App.) 218 S. W. 777, certiorari denied Payne, Agent v. Mills, 255 U. S. 576, 41 S. Ct. 447, 65 L. Ed. 794; St. Louis-San F. R. Co. v. Pearson, 170 Ark. 842, 281 S. W. 910, certiorari denied 273 U. S. 711, 47 S. Ct. 101, 71 L. Ed. 853.

It should be noted that the damages allowed for conscious pain and suffering endured by the injured man as a result of his injury does not enter into the problem. Such damages are entirely separate and distinct from the loss of pecuniary benefits sustained by the dependent wife and children. St. Louis, etc., R. Co. v. Craft, 115 Ark. 483, 171 S. W. 1185, L. R. A. 1916C, page 817; Id., 237 U. S. 648, 35 S. Ct. 704, 59 L. Ed. 1160; Kansas City S. R. Co. v. Leslie, 238 U. S. 599, 35 S. Ct. 844, 59 L. Ed. 1478; Great Northern R. Co. v. Capitol Trust Co., 242 U. S. 144, 37 S. Ct. 41, 61 L. Ed. 208, L. R. A. 1917E, page 1050. The purpose, purport, and effect of the survival amendment to the Employers' Liability Act (45 USCA, sec. 59) is expounded by the Supreme Court in St. L., I. M. & S. R. Co. v. Craft, 237 U. S. 648, 35 S. Ct. 704, 706, 59 L. Ed. 1160, wherein it is said:

"It continues, as before, to provide for two distinct rights of action: one in the injured person for his personal loss and suffering where the injuries are not immediately fatal, and the other in his personal representative for the pecuniary loss sustained by designated relatives where the injuries immediately or ultimately result in death. Without abrogating or curtailing either right, the new section provides in exact words that the right given to the injured person 'shall survive' to his personal representatives 'for the benefit of' the same relatives in whose behalf the other right is given. Brought into the act, by way of amendment, this provision expresses the deliberate will of Congress. Its terms are direct, evidently carefully chosen, and should be given effect accordingly. It does not mean that the injured person's right shall survive to his personal representative and yet be unenforceable by the latter, or that the survival shall be for the benefit of the designated relatives, and yet be of no avail to them. On the contrary, it

means that the right existing in the injured person at his death—a right covering his loss and suffering while he lived, but taking no account of his premature death or of what he would have earned or accomplished in the natural span of life—shall survive to his personal representative to the end that it may be enforced and the proceeds paid to the relatives indicated. And when this provision and sec. 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonablly compensatory for the loss and suffering of the injured person while he lived. Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong." Cf. Garrett v. Louisville & N. R. Co., 235 U. S. 308, 35 S. Ct. 32, 59 L. Ed. 242.

It is manifest from the nature of such damage that it does not enter into the calculation of the amount of compensation to be awarded the dependents for their distinct loss of pecuniary benefits which is the basis of their rights under the original act.

Tested by the measure of damages defined by the Supreme Court for the guidance of courts and juries, and by the evidence upon which the damages must be ascertained and assessed, the verdict in this case is not excessive as to either beneficiary or as a whole.

4. Criticism is leveled at the action of the trial court in reopening the case for the admission of some additional testimony after an argument for appellant had been addressed to the jury. It then developed that plaintiff, through some oversight, had failed to offer evidence as to the exact amount of Jolly's wages for any period preceding his injury. There was testimony to the effect that he was employed by the railroad company in a gain-

ful pursuit, and that he had in addition to maintaining himself and his family, saved from his earnings a sum sufficient to acquire a home valued at $4,200. It had been entirely paid for from Jolly's savings, except an item of $1,500, which had been borrowed and secured by a lien on the property. It was manifestly important, however, that his customary compensation for his labor should be definitely known. Plaintiff first entered a motion to set aside the swearing of the jury and to continue the case, but that motion was denied. She then requested permission to call a witness on the point, which request was granted over appellant's objection. The additional evidence showed nothing except the actual wages paid to Jolly by his employer during the year 1927. It varied through the months from $165.50, the lowest, to $251.21, the highest for one month, and aggregated $2,518.27 for the year. The monthly average for the year was $209.85. The incident caused no material delay, and the facts brought into the record were known in advance to the defendant. It constituted no surprise and possibly prevented the necessity of another trial of the case. The defendant did not offer countervailing evidence, or ask for time to do so, and refused an opportunity offered by the court to reargue the case to the jury. The whole matter of reopening a case for further testimony rests in the discretion of the trial court. That discretion is a judicial, not an arbitrary one (Sun Ins. Office v. Stegar, 129 Ky. 808, 112 S. W. 922), and this court will not interfere with its exercise unless it is palpably abused. Western Union Tel. Co. v. Parsons, 72 S. W. 800, 24 Ky. Law Rep. 2008; Ballowe v. Hillman, 37 S. W. 950, 18 Ky. Law Rep. 677; Mutual Life Ins. Co. v. Thomson, 94 Ky. 253, 22 S. W. 87, 14 Ky. Law Rep. 800; Taylor v. Shemwell, 4 B. Mon. 575; Taulbee v. Moore, 106 Ky. 749, 51 S. W. 564, 21 Ky. Law Rep. 378; Louisville R. Co. v. Williams, 109 S. W. 874, 33 Ky. Law Rep. 168; Rogers v. Flick, 144 Ky. 844, 139 S. W. 1098; Tenn. Cent. R. Co. v. Walker, 155 Ky. 768, 160 S. W. 494; Chesapeake & O. R. Co. v. Dupee, 67 S. W. 16, 23 Ky. Law Rep. 2349.

The action taken by the trial court in this instance, apart from any consideration of the circumstances that brought about the situation, was equal to the exigency, did no injustice, and worked no prejudice to the appellant. It is apparent, therefore, that there was no abuse of the discretion reposed in the trial court.

5. Complaint is made that the trial court erred in the instructions to the jury in two particulars: First, in directing the jury to apportion the damages among the several beneficiaries according to the amount of loss suffered by each of them in being deprived of pecuniary benefits reasonably to be expected; and, second, in its definitions of contributory negligence.

As to the apportionment of the damages by the verdict, but little need be said. The jury is required to assess the damages separately sustained by each dependent by finding a fair compensation for the loss of pecuniary benefits reasonably to be expected from a continuation of the life of the deceased. It is obvious that the benefits to each dependent may be different in kind, character, and duration. For instance, the youngest child in this case would probably be dependent for more than 20 years, the oldest child for only 13 years, and the other one for 15 years. If an apportionment is not made by the jury, there is no basis to determine the relative allowance to each beneficiary, and the damage to one might be diverted to another dependent. Fogarty v. Northern P. R. Co., 74 Wash. 397, 133 P. 609, L. R. A. 1916C, page 800. In Gulf, C. & S. F. R. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 427, 57 L. Ed. 785, the Supreme Court said:

> "The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss."

This court has approved the practice of allowing the jury to fix the amount due each dependent (Illinois Cent. R. Co. v. Skinner, 177 Ky. 62, 197 S. W. 552, certiorari denied 246 U. S. 663, 38 S. Ct. 333, 62 L. Ed. 928), and a state court may follow that practice without affecting any right of the defendant. Central Vt. R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252. The considerations requiring it are of practical importance, and, so long as the defendant is not required to pay damages to one not actually dependent, it may not complain. Fogarty v. Northern Pac. R. Co.,

74 Wash. 397, 133 P. 609, L. R. A. 1916C, page 800; Chesapeake & O. R. Co. v. Dwyer, 157 Ky. 590, 163 S. W. 752, second appeal 162 Ky. 427, 172 S. W. 918, reversed on other grounds, Chesapeake & O. R. Co. v. Gainey 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124; Horton v. Seaboard Air Line R. Co., 175 N. C. 472, 95 S. E. 883, certiorari denied 248 U. S. 553, 39 S. Ct. 8, 63 L. Ed. 418.

In Taylor v. Taylor, 232 U. S. 363, 34 S. Ct. 350, 58 L. Ed. 638, it was held that the state statutes regulating the distribution of money did not apply to a recovery under the federal act, and that damages must be distributed in accordance with the federal statute so as to compensate the beneficiaries according to their respective pecuniary losses. Plainly there was no error in directing the jury to apportion the damages among the several dependents according to their relative injuries.

The instructions upon contributory negligence explained the various duties of Henry C. Jolly, failure to perform which would constitute negligence, if such failure contributed to bring about his injury. They further defined contributory negligence as the negligent act of a plaintiff, which, concurring and co-operating with the negligent act of a defendant, is the proximate cause of the injury, and continued in the prescribed form and precise phraseology approved by the Supreme Court in Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096; cf. Seaboard Air Line Ry. v. Tilghman, 237 U. S. 499, 35 S. Ct. 653, 59 L. Ed. 1069. It is insisted that the definition is incorrect, in that any contributory negligence diminishes the recovery whether or not it contributes to or is a cause of the injury. No conduct constitutes contributory negligence unless it enters into the causation of the injury, and but for which it would not have occurred. It is well settled by the decisions that when the alleged contributory negligence remotely, but not directly and proximately, contributes to the injury, that is, negligence which is not causal, it does not operate to diminish damages. Illinois Cent. R. Co. v. Porter (C. C. A.) 207 F. 311. Neither a cause of action nor a defense may be predicated upon an act or omission without causal connection in producing the consequences that are the subject-matter of the contest. Consistently with its duty, the trial court followed the federal decisions instead of the state formula, but there is no essential difference in the ultimate meaning. Con-

tributory negligence, as defined by the federal decisions, is such neglect on the part of the injured person as helps to bring about the injury. It rests on a breach of the duty to exercise ordinary care. It may be the result of inattention or oversight, but it involves the notion of some fault or breach of duty on the part of the employee, constituting a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use, and which failure produced or helped to produce the injury. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, page 1, Ann. Cas. 1915B, 475. The federal statute does not define contributory negligence, but its meaning was well understood, and it has been applied under the act according to the definition that prevailed before its passage. Where the causal negligence is partly attributable to the plaintiff and partly to the carrier, the statute applies, and the damages must be diminished accordingly. Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528; St. Louis & S. F. Railroad Co. v. Brown, 241 U. S. 228, 36 S. Ct. 602, 60 L. Ed. 966; Norfolk & W. R. Co. v. Earnest, supra; Union Pac. R. Co. v. Hadley, 246 U. S. 332, 38 S. Ct. 318, 62 L. Ed. 753; Grand Trunk Western R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838. If both plaintiff and defendant are found to have been guilty of neglect which operated to cause the injury and damage complained of, the total damages thereby caused should be diminished in proportion that plaintiff's own negligence bore to the combined negligence. Norfolk & W. R. Co. v. Earnest, supra; Louisville & N. R. & Lighting Co. v. Beck, 196 Ind. 238, 145 N. E. 886, 147 N. E. 776. It is apparent that the instruction was not erroneous in the particulars complained of, or in any particular we have discovered. It conformed exactly to the decisions of the Supreme Court in cases arising under the act by which the trial court, as well as this court, is bound. The interpretation of the act of Congress by the Supreme Court of the United States has become an integral part of the statute which must be accepted and obeyed. Gulf, C. & S. F. R. Co. v. Moser, 275 U. S. 133, 48 S. Ct. 49, 72 L. Ed. 200.

Judgment is affirmed.